**6**

Osnat KLEIN and Mel Klein

v.

HENRY S. MILLER RESIDENTIAL SERVICES, INC., Ebby Halliday, Inc., Paula Stringer Realtors, Inc., McKee Realtors, Inc., Coldwell, Banker and Company, Wayne Shipley, Red Carpet Corporation of America, Greater Dallas Board of Realtors, Inc., Gallery of Homes Service Corporation, Irving Board of Realtors, Grand Prairie Board of Realtors and Garland Real Estate Board of Realtors, Inc.

No. CA3–78–829–F.

United States District Court,
N. D. Texas,
Dallas Division.

Nov. 1, 1978.

Penner, Jones, Keith & Wagner by Daniel L. Penner, Darrell L. Keith, Fort Worth, Tex., for plaintiffs.

Locke, Purnell, Boren, Laney & Neely by Stanley E. Neely, John H. McElhaney and Stephen Philbin, Dallas, Tex., for Ebby Halliday, Inc.

McGuire, Levy, Collins & McCurley by Albert Levy, Irving, Tex., for Irving Bd. of Realtors, Inc.

Strasburger & Price by Patrick F. McGowan, Dallas, Tex., Peter D. Baird, Kimball J. Corson, Lewis & Roca, Phoenix, Ariz., for Red Carpet Corp. of America.

Jerome L. Prager, Hoppenstein & Prager, Dallas, Tex., for Paula Stringer Realtors, Inc.

Charles O. Shields, Ray, Anderson, Shields, Trotti & Hemphill, Dallas, Tex., for Greater Dallas Bd. of Realtors, Inc. and Wayne Shipley.

Richard N. Currin, Dallas, Tex., for McKee Realtors, Inc.

Ray, Anderson, Shields, Trotti & Hemphill by Charles O. Shields, Dallas, Tex., Weldon Parkhill, Grand Prairie, Tex., Guy W. Hull, II, Garland, Tex., for Garland Bd. of Realtors, Inc. and Grand Prairie Bd. of Realtors, Inc.

Johnson, Bromberg, Leeds & Riggs by Ernest E. Specks, Paul S. Adams, Jr., Glen A. Portman, Dallas, Tex., for Henry S. Miller Residential Services, Inc.

Steven R. Pfister and Joshua M. Brown, Houston, Tex., Ray, Anderson, Shields, Trotti & Hemphill by M. Troy Murrell, Dallas, Tex., Mark E. Grosher, Gen. Counsel, Coldwell Banker Residential Brokerage Co., Fountain Valley, Cal., for Coldwell, Banker & Co.

Finley, Kumble, Wagner, Heine & Underberg, New York City, and Winstead, McGuire, Sechrest & Trimble, Dallas, Tex., for Gallery of Homes Service Corp.

## MEMORANDUM AND ORDER

ROBERT W. PORTER, District Judge.

This is a class action suit brought by the Plaintiffs under Section 4 of the Clayton Act, 15 U.S.C. § 15, on behalf of themselves and other persons similarly situated, for treble damages, attorneys fees and declaratory relief for alleged violations by Defendants of Section 1 of the Sherman Act, 15 U.S.C. § 1. The suit alleges that the Defendants have engaged in a conspiracy the substantial terms of which have been to fix and maintain commission rates for the sale of residential real estate in Dallas County, Texas, to restrict membership of the Defendant listing associations, to restrict broker-franchisees of Defendant franchisors, to arbitrarily exclude certain persons from membership in the Defendant boards of realtors, and to adopt rules and regulations restricting competition between brokers engaged in the selling of residential real estate in Dallas County, Texas.

Defendant Ebby Halliday, Inc. served the Plaintiffs with a notice of deposition, with the examination to commence at 9:30 a. m. on November 1st, 1978. Plaintiffs were required to bring with them to the deposition certain documents in their possession, and Plaintiffs filed a motion for protective order to limit the Defendants' scope of discovery at this deposition. Plaintiffs specifically object to inquiry into and discovery of documents related to Plaintiffs' financial affairs, and Plaintiffs' financial arrangements with their attorneys.

In a class action, the Court is charged with the responsibility of protecting the interests of the potential class members (where the class is still uncertified). The Court must make at some preliminary stage of the litigation a determination as to whether or not one or more members of the class may sue or be sued as representative parties on behalf of all of the class. Rule 23, Fed.R.Civ.Pro. One of the issues the Court must resolve in determining whether or not to certify the class is whether or not the representative parties will fairly and adequately protect the interests of the class. *Johnson v. Georgia Highway Express*, 417 F.2d 1122 (5th Cir. 1969). "Just what measure of representation is adequate is a question of fact that depends on each peculiar

set of circumstances." *Guerine v. J & W Investment Inc.*, 544 F.2d 863 (5th Cir. 1977).

■ The requirement that absent parties be adequately represented is essential to the notion that a class judgment binds absent class members; without this protection, binding absent members would deprive these absent parties of due process of law. *E.g., Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921). "The primary criterion for determining whether the class representative has adequately represented his class for purposes of res judicata is whether the representative, through qualified counsel, vigorously and tenaciously protected the interests of the class." *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973); *see Clark v. South Central Bell Tel. Co.*, 419 F.Supp. 697 (W.D.La.1976).

■ Counsel must convince the Court that it has sufficient training, experience and resources to prosecute a class action. *Johnson v. Shreveport Garment Co.*, 422 F.Supp. 526 (W.D.La.1976); *Ralston v. Volkswagenwerk, A.G.*, 61 F.R.D. 427, 433 (W.D.Mo.1973); *Rode v. Emery Air Freight Corp.*, 76 F.R.D. 229 (W.D.Pa.1977). The costs involved in pursuing a class action include the cost of preparing and sending the notice, *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and the costs of depositions, preparing motions and briefs, and conducting the hearings and trial of the case. *Sayre v. Abraham Lincoln Federal Savings and Loan Ass'n*, 65 F.R.D. 379 (E.D.Pa.1974). If the case takes a number of years to prepare for trial, the expenses and attorney billable hours may amount to hundreds of thousands of dollars. *See, e. g. Clark v. Lomas & Nettleton Financial Corp.*, 79 F.R.D. 641 (N.D.Tex.1978) (derivative action expenses and attorneys fees over 5 years of litigation).

■ The Court must also be adequately informed about the nature of Plaintiffs' fee arrangements because that is a proper question for inquiry if the parties agree to dismiss the class action allegations without prejudice, *Magana v. Platzer Shipyard, Inc.*, 74 F.R.D. 61 (S.D.Tex.1977), and the Court must inquire about this arrangement in making any determination to award attorneys fees to the Plaintiffs if they are successful in prosecuting their class action. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974); *Clark v. Lomas & Nettleton Financial Corp.*, 79 F.R.D. 641 (N.D.Tex.1978).

Plaintiffs contend that the Defendants cannot inquire into their fee arrangements or financial resources because those areas are irrelevant to this lawsuit. *Sanderson v. Winner*, 507 F.2d 477 (10th Cir. 1974), *cert. den.*, 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975); *Bogosian v. Gulf Oil Corp.*, 337 F.Supp. 1230 (E.D.Pa.1972); *see De Milia v. Cybernetics Int'l Corp.*, 15 F.R.Serv.2d 1385 (S.D.N.Y.1972); *Sayre v. Abraham Lincoln Federal Savings & Loan Assn.*, 65 F.R.D. 379 (E.D.Pa.1974). *Sanderson* rejected discovery of plaintiff's net worth in an antitrust case because: (1) *Eisen*, while indicating that in most circumstances Plaintiffs must pay the cost of sending notice to the class, did not approve "oppressive" discovery to discourage antitrust litigation; (2) *Ralston* and *P.D.Q. Inc. of Miami v. Nissan Motor Corp.*, 61 F.R.D. 372 (S.D.Fla. 1973), two cases permitting discovery of plaintiff's ability to pay, involved attempts to certify nationwide classes where there was a legitimate concern, not present in *Sanderson*, about the ability of plaintiffs to lead a class of this magnitude; and (3) if Defendants were concerned about the ability of plaintiffs to pay their lawyers and a judgment for costs, discovery would be available under Rule 69 of the Fed.Rules after such judgment was entered, just like any other lawsuit. *Bogosian* held that the inquiry into the financial affairs of the plaintiff was irrelevant and not "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b), Fed.R.Civ.Pro.

■ I find that the inquiry into Plaintiffs' financial status and fee arrangement is relevant to the question of Plaintiffs'

ability to protect the interests of potential class members by adequate funding of this lawsuit, and the question of award of attorneys fees in the settlement or possible judgment of this lawsuit. The Court must maintain constant vigilance in overseeing the conduct of the self-appointed class representative, *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973), and that responsibility extends to making an early inquiry into these matters so that if the Plaintiffs are clearly inadequate representatives or their attorneys are inadequate, that determination can be made as quickly as possible. The cases cited by Plaintiffs clearly hold contrary to my decision, but they overlook this reasoning. They also do not recognize that the Court has authority under Rule 23, authority that is distinct from that under the rules of discovery, to protect the interests of the class and to order discovery. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

Plaintiffs also contend that inquiry into fee arrangements and financial affairs of the Plaintiffs violates the attorney client privilege. Plaintiffs state that they intend to advance the Plaintiffs and class all expenses and costs of this litigation, and that that fact is all that Defendants are entitled to know at this time.

 The advancing or guaranteeing of payment of the costs and expenses of litigation by a lawyer (subject of reimbursement) is a permissible form of funding large scale litigation. Canon 5, Ethical Consideration 5–8, Code of Professional Responsibility; DR5–103(b), ABA Code of Professional Responsibility; *Sayre v. Abraham Lincoln Federal Savings and Loan Assn., supra* at 383–384; *Sanderson v. Winner, supra,* at 480. There is generally no attorney-client privilege as to the identity of the client, conditions of employment or matters involving receipt of fees. *In Re Semel*, 411 F.2d 195, 197 (3rd Cir. 1969), *cert. den.*, 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973); *United States v. Schmidt*, 360 F.Supp. 339 (M.D.Pa.1973). In ruling on the protective order, however, I

have provided for an effective means of review of Plaintiffs' attorney/client privilege objections.

For the reasons stated I make the following ruling on Plaintiffs' motion for protective order as to the deposition of the two Plaintiffs and the production at the deposition of 7 groups of documents:

(1) Plaintiffs' request for a general protective order to quash the deposition of the Plaintiffs and preclude any inquiry into the financial affairs of the Plaintiffs or the Plaintiffs' fee arrangements is hereby denied except as provided below;

(2) The Plaintiffs' request for a protective order as to the documents listed as (1) and (2) in the list of documents attached to the notice of deposition is hereby denied (the Court does not believe the Plaintiffs challenged these two requests in their request for a protective order anyway);

(3) The Court denies Plaintiffs' request for a protective order as it relates to:

Communications (written or oral) between plaintiffs and any defendant in this action (including communications with any representative of plaintiffs or any representative of any defendant)

except as to communications involving Plaintiffs' attorneys, which may be privileged, and documents which Plaintiffs believe fall within this limited exception should be submitted to the Court for in camera examination;

(3) Plaintiffs' request for a protective order as to:

Plaintiffs' ability to incur the cost of this litigation including but not limited to plaintiffs' personal financial statements, federal income tax returns, W–2 forms, and other documents reflecting plaintiffs' income since January 1, 1974

is hereby denied except that the court modifies the date in this request to January 1, 1977 as the court cannot perceive the relevance of Plaintiffs' financial condition four years ago, and except that this information shall only be revealed to the lawyers for the parties in this case, and shall not be revealed to any other person, corporation, or

other entity without prior written order of this Court;

(4) The Court hereby denies Plaintiffs' request for a protective order as to:

Promises or committments by persons, firms, associations or corporations other than plaintiffs relating to the payment, advancement, guarantee or underwriting of all or any part of the expenses of this litigation

except with respect to promises or committments which the Plaintiffs believe are covered by the attorney/client privilege and these shall be submitted to the Court for in camera inspection;

(5) Plaintiffs' request for a protective order as to:

Any interest plaintiffs and any other person, firm, association, or corporation may have in the outcome of this action, including but not limited to plaintiffs' direct or indirect interest, beneficial or otherwise, in any attorneys' fees or court cost expenses that may be awarded in this action

except as Plaintiffs believe that these matters are covered by the attorney/client privilege, and they are then to be submitted to the Court for in camera inspection;

(6) Plaintiffs' motion for protective order as to Plaintiffs' institution of this action, including but limited to documents reflecting, referring to or setting forth plaintiffs' contract, relationship or arrangement with the attorneys of record or any other attorney aided or assisting plaintiffs in this action, as well as any other person, firm, association or corporation aiding or assisting plaintiffs in this action is hereby denied.

It is so Ordered.