**SHELL PETROLEUM, INC., and Subsidiary Corporations, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–945 T.

United States Court of Federal Claims.

May 5, 2000.

Charles W. Hall, Houston, Texas, for plaintiff. Kenneth C. Gobetz, Suffern, New York; Charles R. Herpich, Jr., Sara Trapani, Nancy T. Bowen and Shawn R. O'Brien, Houston, Texas, of counsel.

Dennis M. Donohue, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, DC, for defendant, with whom were George L. Squires; Sheryl B. Flum; Mildred L. Seidman, Chief; and Loretta C. Argrett, Assistant Attorney General. David Gustafson, United States Department of Justice, Washington, DC, of counsel.

## OPINION

DAMICH, Judge.

The time for conducting fact discovery expired on March 15, 2000, the deadline for filing motions to compel. On March 13, 2000, the Plaintiff served discovery requests. Ordinarily, the Defendant has 30 days to object. Within this 30 days, the Defendant filed an objection that asserted that the deadline for serving discovery requests had passed. On April 11, 2000, the Plaintiff filed what is effectively a motion to compel.

To avoid the problem of missing the deadline for serving fact discovery, the Plaintiff argues that its discovery relates to "expert" discovery. The time for expert discovery had not yet passed when the Plaintiff filed its motion to compel. Thus, the decisive issue is whether the underlying discovery requests concerned "fact" discovery or "expert" discovery.

The Court rules that the underlying discovery requests seek factual information. Accordingly, because the time for factual discovery expired, the Defendant's objection to the discovery was justified. The following discussion, beginning with the complaint and procedural posture, explains the Court's reasoning.

### Complaint

The Plaintiff, Shell Petroleum, Inc., claims a refund for taxes paid in 1988 and 1989. The basis for the refund claim is that the Plaintiff is entitled to a tax credit under Internal Revenue Code § 29.

Section 29 authorizes a $3 per "barrel-of-oil equivalent of qualified fuels—(A) sold by the taxpayer to an unrelated person during

the taxable year." Section 29(a)(2). The statute defines "barrel-of-oil equivalent" and "related persons." Section 29(d)(6); 29(d)(8). Furthermore, the statute is limited to qualified fuels produced after December 31, 1979 and before January 1, 1993. Section 29(f).

## Procedural Setting

The Court conducted a status conference to establish deadlines in this case. The parties agreed to the deadlines, which the Court memorialized as an order. In pertinent part, the July 28, 1999 Order stated:

e. Fact discovery shall close on March 15, 2000. All motions to compel relating to pending discovery disputes shall be filed on or before March 15, 2000.

f. Expert discovery shall close on April 30, 2000.

The order differentiated between "fact discovery" and "expert discovery." The purpose of this distinction was to allow the parties to investigate, completely, all "facts" before the parties proceeded to expert discovery. During expert discovery, the parties would have an opportunity to learn about the experts' opinions, which the Court perceived as different from the facts of the case. If the experts know (or should know) all the facts before setting out their opinions in expert reports, then the opinions should not change because of the discovery of "new" facts. This, at least, was the theory.

At the parties' request, the scheduling order also specified that the close of fact discovery meant that all motions to compel had to be filed before March 15, 2000. Consequently, under normal rules, the discovery request had to be served at least 30 days earlier. For example, if the discovery were served on Friday, February 11, 2000, then the responding party would be permitted 30 days—or until Monday March 13, 2000—to object. *See* R.C.F.C. 33(a), 34(b), 36(a) (establishing 30 days as usual time for objecting to interrogatories, requests for production, and requests for admissions). After the receipt of the objections and a good-faith negotiation to resolve the dispute, the party propounding the discovery could file a motion to compel.

The Court expected that the clarity in its Order would minimize discovery disputes, at least with regard to timing. The Court's expectation, however, may have been too optimistic.

On March 13, 2000, the Plaintiff served a set of discovery requests. These requests were comprised of the Plaintiff's Second Set of Requests for Admissions, Fourth Set of Interrogatories and Fifth Request for Production. There are four different topics, which are described in more detail below.

These discovery requests follow the same pattern, which is generalized as follows. The Requests for Admission seek the Defendant's agreement on a particular point. If the Defendant does not admit the Plaintiff's point, then an Interrogatory requests the evidence that supports why the Defendant disagreed with the Plaintiff's request for admission. Finally, the Request for Production asks for all documents identified in the answers to interrogatories.

On March 17, 2000, the Defendant served an objection to the Plaintiff's discovery requests. The Defendant argues that the discovery requests were served too late because the time for serving discovery requests, other than discovery requests concerning expert witnesses, expired. This objection was not overcome, despite good-faith efforts to negotiate a compromise. Shell filed the present motion.[1]

## Discovery Dispute

The primary issue to be resolved is whether the Plaintiff's discovery requests sought factual information or information relating to experts. The Plaintiff argues that because

---

1. Shell's motion is captioned "Motion to Deem Second Set of Requests for Admissions Admitted." This motion is effectively a motion to compel the Defendant to answer the Requests for Admissions because after an appropriate objection is interposed, the Court must rule on the objection and order an answer before deeming the requests for admissions admitted by default.

*See* R.C.F.C. 36(a). Shell's own motion requests, as an alternative form of relief, that the Court order the Defendant to respond to the discovery requests.

Thus, in evaluating the pending motion, the court looks to the substance of the motion, not its caption.

its Requests for Admission refer specifically to a report produced by an expert and require the expert's interpretation of his report as part of the answer, the discovery requests are appropriate as expert discovery. The Defendant contends that discovery requests address fact matters.

■ Trial courts enjoy broad discretion in controlling discovery. *See Dorf & Stanton Communications, Inc. v. Molson Breweries*, 100 F.3d 919, 922–23 (Fed.Cir.1996) (applying law from the Second Circuit); *see also Western Electric Company, Inc. v. Piezo Technology, Inc.*, 860 F.2d 428, 430 (Fed.Cir. 1988). Although in *Dorf & Stanton* and *Western Electric Co.* the Federal Circuit was reviewing cases brought under the Federal Rules of Civil Procedure, the Federal Circuit has reviewed discovery decisions from the Court of Federal Claims (or its predecessor) under the same abuse of discretion standard. *See, e.g., Hendler v. United States*, 952 F.2d 1364, 1381 (Fed.Cir.1991); *Adkins v. United States*, 816 F.2d 1580, 1581–82 (Fed.Cir.1987) (affirming decision by the Claims Court to dismiss a complaint for failure to comply with discovery by violating Rule 37).

The Court is not aware of any precedent discussing whether discovery is part of "fact discovery" or "expert discovery." The most analogous situation is under Fed.R.Evid. 701, which permits a lay witness to provide opinion testimony in some circumstances.

The leading commentators on evidence recognize that the difference between "fact" and "opinion" evidence is not clear.

> [A]s soon as we come to analyze and define these terms for the purpose of that accuracy which is necessary in legal rulings, we find that the distinction vanishes, that a flux ensues, and that nearly everything which we choose to call "fact," either is or may be only "opinion" or inference.
>
> 7 Wigmore, Evidence § 1919 (Chadbourn rev.1978).
>
> The difference between so-called "fact," then, and "opinion," is not a difference between opposites or contrasting absolutes, but a mere difference in degree with no recognizable line to mark the boundary
>
> . . . .
>
> Thus, good sense demands that the trial judge be accorded a wide range of discretion at least in classifying evidence as "fact" or "opinion."

*McCormick on Evidence*, § 11 (4th Ed.1992). *See also* Graham, Michael H., *Handbook of Federal Evidence* (4th Ed.1996) § 701.1 (citing *Securities and Exchange Comm'n v. Texas Gulf Sulphur Co.*, 446 F.2d 1301, 1305 (2nd Cir.1971)).

■ Accordingly, the Court holds that it has discretion to decide whether the discovery is "fact" discovery or "expert" discovery. In this case, the discovery is fact discovery.

Two reasons support this conclusion. The primary reason for this conclusion is an analysis of the four different topics covered by the discovery requests. All topics are "fact areas." The second reason is that most discovery requests do not refer to a report completed by an expert.

The first group of discovery requests focuses on the quantity of oil produced from certain wells. These discovery requests refer to a report of Richard F. Strickland[2] and seek information about the quantity of oil produced from credit wells.[3] A quantity is a "fact."[4] Although the United States has retained an outside person to review documents produced by Shell that substantiate

---

**2.** Strickland is an expert retained by the United States.

**3.** Credit well is defined in the Requests for Admissions.

**4.** The Court understands that the parties do not differentiate the oil into different categories. If there were a dispute about categorization, then expert opinion may be relevant to determining quantity. Hypothetically, assume that the parties agree that 10 barrels of oil were produced. One

side asserts that 5 barrels were Type A oil and 5 barrels were Type B oil. In contrast, the other side asserts that 7 barrels were Type A oil and 3 barrels were Type A oil. Under these circumstances, whether 2 barrels were Type A oil or Type B oil could raise an issue on which expert opinion would be relevant.

In the present case, the parties have not agreed that a certain quantity (hypothetically, 10 barrels) was produced. Whether 10 barrels (or 9 barrels or 11 barrels) were produced is a question of fact.

Shell's claim, this participation does not change a "fact" to an "opinion."

The second topic of discovery requests is the identity of "credit wells." Shell states that " 'credit well' means a well which produced hydrocarbons for which Shell claims the credit under Section 29 of the Internal Revenue Code." Whether Shell is claiming a credit for oil produced from a particular well is a question of fact, not a question of opinion.

A third area of inquiry is the amount of oil sold to third parties. The identity of the purchaser is also a fact. Whether the purchaser is not a "related person," as that term is defined in the statute, could approach an opinion because it involves interpretation of a statute. These distinct questions (who purchased the oil and whether the purchaser is a related person) could be addressed in separate discovery requests. The first question, certainly, is a factual question.

The fourth area of discovery is the BTU adjustment factor for the oil produced from certain reservoirs. The Court understands that the BTU adjustment factor is a scientific unit that measures the amount of energy in a barrel of oil. Since this unit is capable of being measured objectively, the BTU adjustment factor appears to be a fact. It is conceivable that experts could disagree on the BTU adjustment factor in which case expert opinion could be relevant. Setting aside this possibility, the Court presumes that BTU adjustment factor is a "fact."[5] In any event, by asking about this topic during fact discovery, Shell could identify whether the fact is disputed and then conduct appropriate discovery during the expert discovery phase.

As a second reason for ruling that Shell is seeking "factual information," the Court notes that the United States may not need to consult any expert in seeking to answer the discovery. Shell refers to the report of Richard F. Strickland only for the first area of discovery, the amount of oil produced from certain wells. For the other three areas,

Shell does not refer to an expert report. Therefore, Shell's argument that its discovery is "expert discovery" because it requires the interpretation of an expert report is not valid on its face for three of the four areas of discovery.

**Conclusion**

Shell has propounded discovery requests, after the time for serving discovery about facts has expired. The discovery requests are requests that seek "factual,"—not "opinion" and not "expert"—information. Accordingly, the United States's objection is sustained. Shell's motion is DENIED.

Ultimately, the litigants and the Court will benefit if the parties can agree on the topics that are the subject of the discovery requests discussed in this opinion. Despite their untimeliness, the discovery requests could narrow the issues of fact that must be resolved at trial. Since the discovery requests remain useful, the Court will entertain a motion for leave to file discovery out of time.[6] Appropriate objections to that motion will also be considered. Any motion should be filed within 15 days of the publication of this opinion.

---

**5.** The fact that the BTU adjustment factor is a scientific measurement does not make it less a fact. For example, temperature is measured in degrees Fahrenheit or Celsius. Both degrees Fahrenheit and degrees Celsius are defined by science. Yet, temperature is a fact.

**6.** Shell should be aware that opening fact discovery now may delay the resolution of the case.